2020 IL App (1st) 171995-U

FIFTH DIVISION
July 24, 2020

No. 1-17-1995

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04 CR 11843 |
| | ) | |
| RECO WILSON, | ) | |
| | ) | Honorable Alfredo Maldonado, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court correctly dismissed petitioner's ineffective assistance of trial counsel claims at the second stage of postconviction proceedings. We affirm.

¶ 2    Petitioner Reco Wilson appeals the second stage dismissal of his *pro se* and supplemental petitions for postconviction relief. After a simultaneous, but severed, bench trial, the circuit court convicted him on an accountability theory of first degree murder. He was sentenced to a term of 40 years in prison. He argues that this case should be remanded for a third stage evidentiary hearing based on claims of ineffective assistance of trial counsel. He contends that trial counsel failed to call a trial witness who would have corroborated his defense, and to call his

grandmother to testify at the suppression hearing to rebut the State's suggestion that his testimony was a recent fabrication. We affirm the circuit court's dismissal of the petitions.

¶ 3                                          BACKGROUND

¶ 4     The facts are set forth in a previous opinion of this court. See *People v. Wilson*, 2013 IL App (1st) 112303. Therefore, we will limit our discussion only to those facts pertinent to the issues raised in this appeal.

¶ 5     Petitioner was charged with first degree murder, attempt first degree murder, aggravated discharge of a firearm and aggravated vehicular hijacking. Codefendant Marcel Milton, who is not a party to this appeal, fatally shot Deon Gardner during the course of an aggravated vehicular hijacking. Petitioner was convicted on an accountability theory for calling Milton and informing him of the vehicle's location, knowing that Milton was armed with a gun.

¶ 6     On March 17 or 18, 2004, petitioner approached Sergio Wray to ask if he could move a car for him. Wray agreed, and petitioner drove him to an area near 78th Street and South Shore Drive in Chicago. Petitioner gave Wray the keys to a Jeep Grand Cherokee that he and Milton had stolen earlier from a rental facility. Petitioner told Wray to follow him in the Jeep to 77th Street and Yates Boulevard, but after losing sight of petitioner's vehicle, Wray decided to keep the Jeep.

¶ 7     During the evening of March 22, 2004, Wray was watching movies with Lamar Murphy and Gardner at Murphy's apartment at 6926 South Michigan Avenue. At about 9:00 p.m., Wray asked Murphy to drive him and Gardner in the Jeep to Gardner's house to retrieve more movies. As they pulled away from the curb, a white car travelling the wrong way  approached the Jeep and stopped. Milton exited the passenger seat of the white car, pulled out a gun, and ordered the men to exit the Jeep. Milton fired two shots at Murphy and Wray as they exited through the

driver's door and ran. Milton then entered the driver's seat and ordered Gardner, who was in the back seat, to exit the Jeep. As Gardner exited the car, Milton shot him once in the back and then twice after he had fallen to the ground.

¶ 8     At trial, the State introduced petitioner's videotaped statement, in which he stated that earlier that day, he saw the Jeep near East 69th Street and South Cottage Grove Avenue. He related that he had contacted Milton on his cell phone and told him that he was following the Jeep. He told Milton to bring an extra set of keys to retrieve the vehicle. Petitioner then called his cousin to give Milton a ride. He followed the Jeep to 69th and Michigan, where he observed the occupants exit the vehicle and enter a building. In the videotaped statement, petitioner acknowledged that he knew Milton carried a gun in such situations and admitted that he thought Milton would bring a gun to retrieve the Jeep. He also stated that when he later called Milton on his cell phone to tell him to hurry, Milton stated that he had his "blow on [him]." Petitioner explained that "blow" referred to a gun. He observed Milton's arrival to retrieve the Jeep and the firing of the initial two shots at Murphy and Wray. As petitioner drove away, he looked in his rearview mirror and saw Milton shoot Gardner once as a he exited the Jeep and twice as he lay on the ground.

¶ 9     Petitioner testified at trial and, contrary to his videotaped statement, claimed that he did not observe Milton shoot Gardner. Instead, he testified that he was with his girlfriend, Tiffany Taylor, and her children at a McDonald's restaurant when he saw the Jeep drive by. He stated that Taylor was with him in the car when he called Milton and drove to the area of 69th and Michigan, and that they had left before Milton arrived. Petitioner admitted that he did not know where Taylor was during trial, over defense counsel's objections.

¶ 10    On direct appeal, appellate counsel filed a motion for leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing that there were no issues of merit on appeal. See *People v. Wilson*, No. 1-08-2836, 399 Ill. App. 3d 1225 (2010) (unpublished order under Supreme Court Rule 23). Petitioner filed a *pro se* response, arguing that trial counsel was ineffective for failing to call Taylor as a witness to corroborate his defense despite his repeated requests for counsel to do so. *Id*. This court affirmed petitioner's conviction on appeal, concluding that trial counsel "made a conscious decision" not to call Taylor as a witness, which was a matter of trial strategy, generally immune from an ineffective assistance claim. *Id*.

¶ 11    Petitioner subsequently filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). Petitioner asserted that he was denied effective assistance of trial counsel because counsel failed to: (1) assure that police had the proper paperwork to remove him from the county jail for questioning, (2) investigate the number of stolen cars and trucks in Wilson's neighborhood to negate law enforcement's stated reason for questioning him, (3) interview or call Taylor as an alibi witness, and (4) move to sever Wilson's trial from Milton's. Wilson further claimed that he was convicted of an offense not charged in the indictment and was denied effective assistance of appellate counsel in his direct appeal.

¶ 12    Petitioner attached to his petition a signed and notarized affidavit from Taylor in which she attested that, on March 22, 2004, she was with petitioner from 4:00 p.m. until 11:00 p.m. At one point, petitioner, Taylor, and their children went to a McDonald's restaurant located at East 79th Street and South Phillips Avenue. As they pulled out of the McDonald's drive through, petitioner saw the Jeep pass by and stated, "there goes Marcell's truck." They followed the Jeep until it arrived at 69th and Michigan, at which point petitioner called Milton using the cell phone

speaker. Taylor heard petitioner tell Milton to bring an extra set of keys to retrieve the Jeep. Taylor attested that they left the area before Milton arrived. She also stated that she had contacted petitioner's trial counsel and told him what she witnessed the night of the incident. Trial counsel told Taylor that he would contact her before trial, but he never did so.

¶ 13   The circuit court dismissed the *pro se* petition, concluding that all the issues raised were barred by *res judicata*, having been raised and settled previously on direct appeal. The court determined that petitioner's claims had no arguable basis in law and that he was not entitled to proceed to the second stage of the postconviction relief process with appointed counsel.

¶ 14   On appeal, petitioner contended that he presented an arguable ineffective assistance of trial counsel claim in failing to present Taylor as a witness because her version of events would have corroborated his trial testimony. This court applied the standard of first stage postconviction review in *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009), finding "it is at least arguable that defendant's trial counsel was ineffective in failing to present Taylor as a witness, given the potential testimony set out in her affidavit." *Wilson*, 2013 IL App (1st) 112303, ¶ 22. We reversed the circuit court's summary dismissal of the postconviction petition and remanded for further proceedings.

¶ 15   On remand for second stage postconviction proceedings, petitioner's appointed counsel filed a supplemental postconviction petition and a certificate under Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Petitioner sought a third stage evidentiary hearing based on his ineffective assistance of trial counsel claims. He argued that Taylor's testimony would have supported his defense and disclaimed most of the videotaped statement, which he asserted was coerced. Taylor had been listed as a witness in trial counsel's answer to the State's discovery motion. On June 10, 2008, the parties discussed scheduling for the next trial date, during which trial counsel

stated, "I've got a witness, Tiffany, I put her on my list. Her days off are on Mondays. She['s] asking if it's possible we can do it on a Monday." Trial counsel stated that Taylor would "be a short witness."

¶ 16   Taylor provided a new affidavit in support of the petition, attesting that she was with petitioner, her two daughters, and petitioner's daughter during the evening of March 22, 2004. She further attested:

"3. We left McDonald's and [petitioner] drove to 69th and Michigan. We did not stop or park but rolled past. No shooting occurred while we were there. We went straight to my mother's home and we all went inside.

4. [Petitioner's] cell phone was not working properly and could only be used as a speaker phone. Therefore, I could hear what both parties said over the phone. I knew that he was talking to Marcel Milton and remember him telling Marcel either to come get his car or to bring keys.

5. I did not hear anyone say 'blow' or discuss a gun. I did not hear [petitioner] tell Marcel that people were getting in the truck, because we left 69th and Michigan without stopping and did not see Marcel there.

6. I told [petitioner's] lawyer what happened. I did not tell him that I was unwilling to testify. However, I never received a subpoena from [petitioner's] lawyers. I did not go to [petitioner's] trial because I did not get a subpoena and the lawyers did not tell me to be there.

7. I signed an affidavit in 2011, which I confirm.

8. If I would have received a subpoena, or if the lawyer would have called me and told me to come to court on July 21, 2008, I would have testified consistently with my affidavits, and would do so if called as a witness now."

¶ 17    Postconviction counsel also argued that trial counsel was ineffective for failing to investigate and call petitioner's grandmother, Willie Mae Wilson, as a witness at the suppression hearing. He contended that Wilson would have corroborated his testimony that the police made falsified promises of leniency to him. Wilson submitted an affidavit attesting that in April 2004, Chicago police called her and told her that petitioner had been arrested for murder. A police officer handed the phone to petitioner, who was crying and stated that "they got him for murder but he didn't do it." Petitioner relayed to Wilson that the officers told him that if he explained what happened, he would not be charged with murder. As a result, Wilson encouraged petitioner to talk to the police.

¶ 18    The State moved to dismiss the petitions, arguing that trial counsel was not ineffective for failing to call Taylor and Wilson as witnesses. The State contended that petitioner failed to make a substantial showing of ineffective assistance of counsel for failure to call Taylor because petitioner's presence at the scene was irrelevant for purposes of establishing his guilt on an accountability theory. Taylor's testimony would not have contradicted the evidence at trial that petitioner provided Milton with the location of the Jeep and arranged for his transportation to the location of the shooting. Further, trial counsel had spoken to Taylor, knew what she had observed, and made the strategic decision not to call her as a witness. The State also argued that petitioner failed to make a substantial showing that trial counsel was ineffective for failing to call Wilson to testify at petitioner's hearing on the motion to supress. The State contended that her affidavit did not support petitioner's claim that her testimony would have corroborated his claim

that the police made false promises of leniency because his grandmother did not hear the police tell petitioner that if he provided a statement, he would not be charged.

¶ 19    The circuit court found that petitioner failed to make a substantial showing of a constitutional violation and granted the State's motion to dismiss the petitions. This appeal followed.

¶ 20                                   ANALYSIS

¶ 21    Petitioner contends that the circuit court erred in granting the State's motion to dismiss his *pro se* and supplemental postconviction petitions at the second stage of proceedings. He argues that he is entitled to a third-stage evidentiary hearing based on trial counsel's failure to call Taylor as a witness to corroborate his defense, and Wilson as a witness during the suppression hearing to rebut the State's suggestion that his testimony was a recent fabrication.

¶ 22    The Act (725 ILCS 5/122-1 *et seq.* (West 2010)) allows a petitioner to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)).

¶ 23    In a noncapital case, postconviction proceedings contain three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the circuit court independently reviews the petition, taking the allegations as true, and determines whether the petition is frivolous or patently without merit. *Id*. A petition may be summarily dismissed as frivolous or patently without merit only if

the petition has no arguable basis either in law or in fact. *Id*. If the court does not summarily dismiss the petition, it advances to the second stage, where counsel may be appointed to an indigent petitioner, and where the State may respond to the petition. *Id*. ¶ 10. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id*. If no such showing is made, the petition is dismissed. Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id*.

¶ 24    Here, the petitions were dismissed at the second stage of proceedings. During the second stage of proceedings, a petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id*. "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in the original.) *Id*. We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 25    Petitioner contends that he made a substantial showing that his trial counsel rendered ineffective assistance for failing to call Taylor and Wilson as witnesses. He argues that there is a reasonable probability that the outcome of the suppression hearing and trial would have been different had the circuit court heard the statements included in Taylor's and Wilson's affidavits.

¶ 26    Claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the supreme court in *People v.*

*Albanese*, 104 Ill. 2d 504 (1984). *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish ineffective assistance, a petitioner must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner. *Id*. Deficient performance is performance that is objectively unreasonable under prevailing professional norms, and prejudice is found where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Petrenko*, 237 Ill. 2d at 496-97; *Strickland*, 466 U.S. at 690, 694. The failure to establish either prong of the *Strickland* test is fatal to the claim. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010) (citing *Strickland*, 466 U.S. at 697).

¶ 27    Matters of trial strategy, however, are generally immune from claims of ineffective assistance of counsel except where the trial strategy results in no meaningful adversarial testing. *People v. West*, 187 Ill. 2d 418, 432-33 (1999). In other words, the effective assistance of counsel merely refers to "competent, not perfect," representation. *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984). Thus, mistakes in trial strategy, tactics, or judgment will not "of themselves" render a trial counsel's representation constitutionally defective. *Id*. For these reasons, we must be highly deferential to trial counsel as to trial strategy, and we must evaluate counsel's performance from his perspective at the time and not "through the lens of hindsight." *Id.*  A defendant bears the burden of overcoming the strong presumption that his counsel's decision was the product of sound trial strategy. *People v. Gacy*, 125 Ill. 2d 117, 126 (1988).

¶ 28    Generally, whether to call a particular witness is a matter of trial strategy (*People v. Flores*, 128 Ill. 2d 66, 85-86 (1989)), and strategic choices made after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable" (*Strickland*, 466 U.S. at 690). An exception to this rule is when counsel's chosen strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. *People v. Reid*, 179 Ill. 2d 297, 310

(1997). Failure to call a witness will not support an ineffective assistance of counsel claim where the circumstances show that the testimony would likely have been harmful or would have had no probative value to a determination of guilt or innocence. *People v. Ashford*, 121 Ill. 2d 55, 74-75 (1988). Additionally, a defense attorney may choose not to call a witness who could be subject to severe impeachment (*People v. Smado*, 322 Ill. App. 3d 329, 335 (2001)), or if he reasonably believes that under the circumstances the individual's testimony is unreliable or would likely have been harmful to the defendant (*Flores*, 128 Ill. 2d at 106).

¶ 29    In this case, taking petitioner's allegations as true, petitioner's presence at the scene was never an issue at trial and Taylor's testimony would only have corroborated that petitioner called Milton, told him where the Jeep was located, and told him "to come get his car or to bring keys." Taylor's testimony would have been cumulative and, therefore, petitioner was not prejudiced by trial counsel's failure to call her as a witness. See *People v. Henderson*, 171 Ill. 2d 124, 155 (1996) (finding that "[t]rial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence"). Further, trial counsel was aware of what Taylor would have testified to and the decision to not call her was a matter of trial strategy rather than a constitutional defect. *Gacy*, 125 Ill. 2d at 126.

¶ 30    We find that the three cases petitioner cites in support of his argument, *People v. Tate*, 305 Ill. App. 3d 607 (1999), *People v. Bates*, 324 Ill. App. 3d 812 (2001), and *People v. Makiel*, 358 Ill. App. 3d 102 (2005), are each inapposite because here, Taylor's proposed testimony was not exculpatory, and trial counsel was aware of Taylor's version of events and chose not to call her as a witness. See *Tate*, 305 Ill. App. 3d at 612 (proposed exculpatory testimony supported theory of misidentification of the defendant); *Bates*, 324 Ill. App. 3d at 815-16 (proposed witness would have provided exculpatory testimony by supporting the defendant's theory of self-

defense); *Makiel*, 358 Ill. App. 3d at 108-09 (trial counsel never contacted or subpoenaed the proposed witness).

¶ 31    In addition, Wilson's affidavit did not support petitioner's claim that the police promised him leniency. Wilson would have been called to corroborate the petitioner's previous testimony that he was told by police he would not be charged with murder if he told them "what happened." Wilson's affidavit was not sufficient to show that the result of the suppression hearing would have been different had she testified.

¶ 32    In sum, petitioner has failed to overcome the "strong presumption" that his counsel's decision was the product of sound trial strategy. *Gacy*, 125 Ill. 2d at 126. Since petitioner has not made a substantial showing of both prongs of the *Strickland* test, his ineffective assistance claim necessarily fails. *Clendenin*, 238 Ill. 2d at 317-18. The circuit court therefore did not err in dismissing his postconviction petitions on the claim of ineffective assistance of trial counsel.

¶ 33                                   CONCLUSION

¶ 34    The circuit court correctly dismissed at the second stage petitioner's ineffective assistance of trial counsel claim. We affirm the judgment of the circuit court of Cook County to dismiss petitioner's *pro se* and supplemental postconviction petitions.

¶ 35    Affirmed.