[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1271 
Appellant, National Distillers and Chemical Corporation, appeals from a judgment in favor of appellee, American Laubscher Corporation, in the amount of $78,911.47 plus interest.
Appellee was a trade creditor of Brad's Machine Products, Inc., of Gadsden, Alabama, when Brad's failed financially in December of 1970. Brad's operated a machine shop in Gadsden. The principal product manufactured by Brad's was an M-125 booster fuse produced under direct contract with the United States Government. The body of the fuse was machined from brass rods. Brad's bought the brass rods from the appellant. Appellee sold certain Swiss screw machine parts to Brad's from 1967 until December, 1970. This suit arose from Brad's inability to pay appellee for these parts.
Appellee filed suit asserting multiple claims against appellant (which itself was Brad's creditor). After numerous amendments, the case was submitted to the jury on a claim asserting that appellant and Brad's had fraudulently conspired to induce appellee to sell goods to Brad's at a time when Brad's was insolvent or in failing circumstances and unable to meet its obligations within a reasonable time after they became due. The claim further asserts that the co-conspirators did not disclose the fact of Brad's insolvency or failing circumstances. The jury found in favor of appellee and assessed damages of $78,911.47 with interest from January 1, 1971, for a total of $99,231.17.
Appellant alleges first that the evidence failed to establish a prima facie case of *Page 1272 
conspiracy and that the jury verdict was contrary to the weight of the evidence. We disagree.
As appellant acknowledges in brief, a conspiracy may be established by circumstantial evidence. As this court stated inBarber v. Stephenson, 260 Ala. 151, 156, 69 So.2d 251, 255
(1954):
 ". . . Concededly there was no positive evidence to that effect, but a conspiracy need not alone be established by that character of evidence. Indeed, seldom is such the case. It is only by looking to the conduct of the alleged conspirators during the progress of the conspiracy and the end result achieved that usually such a fact is established. And to that end it is proper to consider evidence extending over a considerable period, both before and after the date of the alleged combination and even after its termination, just so that the proof has a tendency to establish the ultimate fact."
Roy Compton was Brad's plant comptroller when Brad arrived in Gadsden. Leon Rudd, an internal auditor for National Distillers, came to Gadsden to provide cash control assistance to Brad's.
We think the following testimony was pertinent on the question of conspiracy:
 "A. [Roy Compton]: We [Rudd and I] both worked together. We didn't tell them diametrically opposed — we discussed what our problems were and how we were working them out, and we basically told each creditor the same thing.
 "Q. That's right, you and Mr. Rudd basically told each creditor the same thing?
"A. Certainly.
"Q. What?
 "A. That we were getting things worked out and that National was helping us and that we were going to have money on some new contracts coming in and that things were looking better and that we were going to be able to get our bills paid; that is all you could tell them.
"Q. Did you tell them about holding checks?
"A. No, sir.
 "Q. You didn't ever hear Mr. Rudd tell them about holding checks?
"A. Well, no." (Emphasis added.)
At another point Compton testified:
 "A. Well, we continued to make M-125 fuses for the government, and we — as I mentioned earlier in testimony, Mr. Rudd was a big help to me in staving off creditors and trying to reassure them and working with them and paying a little here and a little there, and trying to work out problems; and it was just a day to day battle."
The record was replete with financial data which tended to show Brad's failing financial condition. There was also ample evidence showing appellant's complicity in the operation of Brad's. This was a proper case for a jury.
Appellant claims the fraud counts that were submitted to the jury were barred by the Statute of Limitations, Tit. 7, § 26, Code of Alabama 1940, Recompiled 1958. Appellee submits that the claims asserted in the amended complaint arose out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original complaint and therefore related back under the provision of Rule 15 (c) A.R.C.P.
Rule 15 (c), in pertinent part, reads as follows:
 "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . ."
A review of the pleading is necessary to understand appellant's contention.
The original complaint filed in April, 1971, alleged in Count 1 that during the years 1969 and 1970 the appellant was engaged in a joint enterprise with Brad's in the operation of Brad's business and that the appellant owed the appellee for work *Page 1273 
and labor done. Count 2 was a common count and Count 3 alleged fraud in that the appellant misrepresented to appellee that Brad's was solvent and its credit was good.
Count 4 was added by amendment in March, 1972, alleging an instrumentality theory.
In October and November, 1972, appellee struck the first four counts and added Counts 5, 6, 7 and 8. The theory of the amended complaint so far as we are here concerned was that Brad's was so organized and controlled by the employees of appellant as to make Brad's merely an instrumentality and alter ego of appellant.
In February, 1973, appellee added Counts 9, 10, 11 and 12.[1]
The theory of these counts was that appellant conspired with Brad's to conceal from the United States Government the true financial condition of Brad's and that by virtue of that conspiracy to conceal the plaintiff was induced to extend further credit to Brad's.
In December, 1974, appellee amended the complaint by striking Counts 5, 6 and 8 and adding Counts 13, 14, 15 and 16. These counts were similar to Counts 9 through 12 except they added allegations that the appellant and Brad's conspired to wrongfully conceal from the appellee and the government the true financial condition of Brad's.
During trial, at the close of appellee's evidence, the court allowed appellee to amend the complaint by adding Counts 17 and 18 over appellant's objection. The essence of these two counts is that the defendant and Brad's fraudulently conspired to induce the plaintiff to sell goods on credit to Brad's at a time when Brad's was insolvent or in failing circumstances.
While several counts remained in the complaint, it was the theory of recovery asserted in Counts 17 and 18 that formed the basis of the trial courts charge to the jury.
Specifically, appellant argues that the amended fraud counts were barred by the Statute of Limitations because they departed from the facts and duty set forth in the original complaint and appellee failed to allege and prove late discovery. Tit. 7, § 42, Code of Alabama 1940, Recompiled 1958.
For this argument to be valid the amended counts must have arisen out of conduct, transactions or occurrences other than those attempted to be set forth in the original complaint. We do not think this was the case.
It is clear that Brad's was indebted to appellee and that appellant, through its agent, was involved in the everyday management of Brad's. For the appellee to recover that debt from the appellant, it was necessary to frame a complaint setting forth liability on the part of the appellant. We are of the opinion that the various amendments to the complaint was an effort on the part of the appellee to allege a theory which would allow recovery. In other words, the various amendments were merely changes in theory rather than declarations upon different conduct. Our conclusion is that the amendments related back to the time of the original filing of the complaint.
 ". . . Rule 15 (c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim. Similarly, while it is still *Page 1274 
the rule that an amendment which states an entirely new claim for relief based on different facts will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specific factual details such as time and place, as well as other items, will relate back.
 "The . . . [A.R.C.P.] have broadened the meaning of the concept of `cause of action,' shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim. And an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back. Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed, or adds additional grounds of negligence, changes the theory of the action from one based on contract to one sounding in tort, changes a demand for equitable relief to one for legal relief, states a different fulfillment of conditions precedent, or increases the amount of damages claimed." 3 Moore, Federal Practice, ¶ 15.15[3], pp. 1025-1031 (1968 ed.).
Furthermore, the fact that a significant amount of time transpired between the original complaint and the various amendments does not in itself affect our conclusion. In Greenv. Wolf Corporation, 50 F.R.D. 220 (N.Y. 1970), the amendments were offered almost four years after the initial complaint. The only explanation given by the attorney was that the laws involved were complex and that the new theory advanced simply did not occur to him previously.
 "[N]either long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend." Id. at 223.
On the other hand, delay as a predicate for a finding of bad faith would be sufficient reason to deny leave to amend. Id.
Appellant next maintains that the trial court improperly allowed appellee to amend the complaint during trial, after a pre-trial order had been issued, and at the close of appellee's case. Appellant argues that at least it was entitled to a continuance.
Rule 15 (b) of the A.R.C.P. provides in pertinent part as follows:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits."
In discussing Rule 15 this court in Stead v. Blue Cross-BlueShield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975), stated as follows:
 ". . . We simply state here that if Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments. However, we state that amendments are to be freely allowed and refusal of an amendment must be based on a valid ground. We state also that Rule 15 must be liberally construed by the trial judges. But, that liberality does not include a situation where the trial on the issues will be unduly delayed or the opposing party unduly prejudiced." *Page 1275 
In the present case we do not believe that the appellant was unduly prejudiced by the allowance of the amendments at the close of appellee's case. Counts 9 through 12 had previously charged appellant with fraud on the government which injured appellee and counts 13 through 16 had previously charged appellant with fraud on the government and the appellee, with the two joined in the conjunctive. Basically, all the last amendments (Counts 17 and 18) did was to charge fraud on theappellant, alone and apart from fraud on the government. Since appellant was already defending double charges of fraud on the appellee and fraud on the government, it worked no prejudice to add two counts charging fraud on the appellee alone.
As to whether the entry of a pre-trial order should prevent further amendment of pleadings, we discussed this subject inHuskey v. W.B. Goodwyn Company, Inc., 295 Ala. 1,321 So.2d 645, 648 (1975):
 "We believe that Alabama Rule 16 must be read in conjunction with Rule 15 and Rule 1; therefore, liberal allowance of amendment when justice so requires must take precedence over strict adherence to the pre-trial order in Alabama practice. . . ."
Although the amendments in Huskey were offered before the beginning of trial, we are convinced that the same criteria should be followed where amendments are offered to conform the pleadings to the evidence if, as here, there is no unfair surprise.
Appellant alleges the trial court improperly charged the jury as to the circumstances raising a duty of disclosure of financial condition by the buyer of goods on credit.
Appellee's requested jury charge number four which was given read as follows:
 "No formal agreement is necessary to constitute an unlawful conspiracy. An unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. The essential combination or conspiracy may be found in a course of dealings or other circumstances as well as in an exchange of words. If you are reasonably satisfied from the evidence that Brad's Machine Products, Inc., and National Distillers and Chemical Corporation were engaged in a course of dealings with the purpose of inducing suppliers to Brad's to extend credit to Brad's at a time when Brad's was insolvent or in failing circumstances, then National Distillers would be guilty of participation in a conspiracy to defraud. If you are further reasonably satisfied from the evidence that the plaintiff in this case, American Laubscher Corporation, was damaged as a proximate consequence of such a conspiracy, then National Distillers would be liable to the plaintiff for such damage." (Emphasis added.)
The rule which the appellee attempted to set forth in its requested charge is found in Maxwell v. Brown Shoe Co.,114 Ala. 304, 308, 21 So. 1009, 1010 (1897):
 ". . . First, the purchaser must have been insolvent or in failing circumstances at the time of the sale; second, he must then have had either a design not to pay for the property, or have had no reasonable expectation of being able to pay for it; and, third, he must have made some fraudulent representation either as to his financial condition or in respect of his intent not to pay, or of his expectation as to paying or he must have fraudulently concealed his condition or his intent not to pay, or his want of expectation that he would be able to pay." (Emphasis added.)
Appellant's argument that Charge 4 omitted any reference to the phrase, "or have had no reasonable expectation of being able to pay for it," is correct.
However, in another part of the oral charge the court charged as follows:
 "A buyer of goods on credit who has no reasonable expectation of paying for them and who is insolvent or in failing circumstances and anyone acting in concert with the buyer in inducing the sale of those goods has a duty to disclose the buyer's financial condition to the seller of the goods." *Page 1276 
We consider for a credit purchaser to come within the rule inMaxwell, supra, he must (1) be either insolvent or in failing circumstances and (2) have a design not to pay or have no reasonable expectation of being able to pay and (3) fraudulently misrepresent or conceal the elements in 1 and 2 above.
Thus, we consider the infirmity of Charge 4 to have been supplied later in the oral charge. Rule 51, A.R.C.P., AlabamaPower Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975).
Appellant claims error because the trial court gave to the jury two different definitions of insolvency. One defined insolvency as the inability of assets to cover liabilities and the second as the inability to pay debts as they become due in the ordinary course of business. Clearly the two are not the same. However, we fail to see any prejudicial error as the evidence showed Brad's to be insolvent under both definitions.
Appellant further argues that the trial court improperly read to the jury statutes inapplicable to the issues. Appellant contends that the action was framed under Tit. 7, § 109, Code of Alabama 1940, Recompiled 1958 (dealing with suppression of truth) and that it was error to instruct the jury on § 108, Code, supra (dealing with misrepresentations) and § 110, Code, supra (dealing with deceit). The authorities have noted much confusion in the relationship of these sections. Clayton v.Glasscock, 221 Ala. 3, 127 So. 538 (1930); Cartwright v. Braly,218 Ala. 49, 117 So. 477 (1928).
We see no need at this time to explore the intricacies of these statutes as we regard any error in relation to reading them to the jury, under the circumstances of this case, to be harmless.
The judgment is affirmed.
AFFIRMED.
All the Justices concur except SHORES, J., who recuses herself.
[1] Tit. 7, § 239, Code of Alabama 1940, Recompiled 1958, is sufficiently broad to allow the amendments prior to July 3, 1973, the effective date of the Rules of Civil Procedure. There being no determination that the new rules would work a hardship, all further amendments were controlled by the new rules. Rule 86, ARCP.